I. Richard Levy
State Bar No. 12265020
Christopher M. McNeill
State Bar No. 24032852
Susan Frierott
State Bar No. 24041247
**BLOCK & GARDEN, LLP**
5949 Sherry Ln., Suite 900
Dallas, Texas 75225
Tel: (214) 866-0990
Fax: (214) 866-0991
*levy@bgvllp.com*

APPLICANTS FOR COUNSEL TO LEVELLAND/HOCKLEY COUNTY ETHANOL, L.L.C., DEBTOR IN POSSESSION

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | | |
|---|---|---|
| IN RE § § | | |
| **LEVELLAND/HOCKLEY COUNTY ETHANOL, L.L.C** § § § § | **CASE NO. 11-50162-11** | |
| | **CHAPTER 11** | |
| **DEBTOR** § § | | |

**MOTION OF THE DEBTOR FOR INTERIM AND FINAL
AUTHORITY TO USE CASH COLLATERAL
PURSUANT TO 11 U.S.C. §363 AND TO GRANT ADEQUATE
PROTECTION PURSUANT TO 11 U.S.C. §361**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

Levelland/Hockley County Ethanol, LLC ("Levelland Ethanol" or "Debtor"), debtor and debtor in possession in the above-referenced Chapter 11 case, by and through its undersigned counsel, files this Motion (the "Motion") to authorize Debtor to use cash collateral pursuant to 11 U.S.C. §363 and to grant adequate protection pursuant to 11 U.S.C. §361. In support of this Motion, Debtor respectfully shows as follows:

**JURISDICTION**

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§157 and 1334 and 11 U.S.C. §§361 and 363(b), (c) and (e). This is a core proceeding

pursuant to 28 U.S.C. §157(b)(2)(A), (M) and (O). Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

**BACKGROUND**

2.	Contemporaneously with the filing of this Motion, on April 27, 2011 (the "Petition Date"), Debtor filed with this Court its voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to §§1107(a) and 1108 of the Bankruptcy Code, Debtor now operates its business and manages its property as debtor in possession.

3.	Levelland Ethanol is a Texas limited liability company that owns and operates a 40 million gallon per annum Ethanol production plant located in Levelland, Hockley county, Texas. The LLC has over 100 members many of whom are local farmers, business people and civic leaders. A recent appraisal of the Debtor's facility values the Debtor's assets, with the Plant under full operation, at over $51.5 million. The Debtors secured bank group, represented by GE Energy Financial Services is owed approximately $33,320,000 in principal and accrued interest as of the petition date, and it owes approximately $9,040,000 in principal and interest to its subordinated secured lender, Farmers Energy Levelland, LLC, who is also member holding 48.6% of the equity interests in the LLC. The debtors unsecured and other obligations, based on its books and records and estimates, as of the petition date are approximately $4,683,000.

4.	As hinted in the prior paragraph, the Debtor has two secured lenders of note: a bank group represented by GE Energy Financial Services and Farmers Energy Levelland, LLC, an affiliate of Rex American Resources Group

*Summary of the GE Senior Debt--loan documents and security interests*

5.	Debtor entered into a Construction and Term Loan Agreement (as the same has been amended from time to time, the "GE Loan Agreement")[1] dated September 27, 2006 with Merrill Lynch Capital, now know as GE Business Financial Services Inc. ("GE"), and the lenders party thereto (the "Lenders").  The GE Loan Agreement is governed by Illinois law. As of March 31, 2011, the principal amount owed by Debtor pursuant to the GE Loan Agreement is $32,782,500, with $547,484.83 in accrued and unpaid interest outstanding.  The original repayment schedule called for 59 consecutive monthly payments of principal (with the amount of each based on a 120-month amortization schedule) beginning in July 2008, with one final payment of all outstanding principal on the original scheduled maturity date of June 1, 2013.  The GE Loan Agreement also calls for an annual prepayment in an amount equal to 70% of Debtor's excess cash flow for each fiscal year beginning with the fiscal year ended December 31, 2008.

6.	The GE loan debt is reflected by a Master Promissory Note dated September 27, 2006.  Interest accrues on the outstanding principal amount at a non-default floating rate of 400 basis points (4.00%) above the LIBO rate and a default rate of 10.0% above the LIBO rate, and is payable monthly prior to the maturity date.

---

[1] The GE Loan Agreement has been amended eight times by a First Amendment to Construction and Term Loan Agreement and Other Loan Documents dated August 10, 2007, a Second Amendment to Construction and Term Loan Agreement dated February 15, 2008, a Third Amendment to Construction and Term Loan Agreement dated February 19, 2008, a Fourth Amendment to Construction and Term Loan Agreement dated May 31, 2008, a Fifth Amendment to Construction and Term Loan Agreement dated May 31, 2008, a Sixth Amendment to Construction and Term Loan Agreement dated January 29, 2009, a Seventh Amendment to Construction and Term Loan Agreement dated September 4, 2009, and an Eight Amendment to Construction and Term Loan Agreement dated September 1, 2010.

7. Pursuant to the GE Loan Agreement and certain ancillary collateral documents, Debtor has granted to GE, as administrative agent for the benefit of the Lenders, a first-priority security interest in all of Debtor's assets with certain limited exceptions. The collateral in which GE holds a security interest generally includes all of Debtor's real property and personal property, including intangible contract rights. GE's security interest is documented by a Mortgage, Deed of Trust, Security Agreement, Assignment and Fixture Financing Statement dated September 6, 2006 and a Security Agreement dated September 27, 2006. At least on UCC-1 statement has been filed by GE's predecessor, Merrill Lynch. Subject to possible discoveries to the contrary during an investigation undertaken in these proceedings, the Debtor's research and understanding of the GE transaction, documents and perfection instruments leads the Debtor to presently believe that the GE loans are fully secured and enforceable, without any known substantial defenses.

8. Debtor has made certain affirmative covenants pursuant to the GE Loan Agreement, including without limitation covenants regarding title to and maintenance of assets (including intellectual property), insurance coverage covenants, deposit account covenants, and a lockbox arrangement covenant in favor of GE. They also contain certain negative covenants pursuant to the GE Loan Agreement, including without limitation prohibitions against mergers and other extraordinary corporate events, transactions with affiliates, incurring additional indebtedness and liens, sale of accounts receivable, entry into burdensome agreements, abandonment of the ethanol plant project, and sale/leaseback transactions.

9. Events of default under the GE Loan Agreement include the standard garden of lender's bugaboos and are based on Debtor's bad, or often otherwise reasonable acts proscribed by the documents.

### FEL Subordinated Debt

10. Debtor is also indebted to Farmers Energy Levelland, LLC ("FEL")[2] pursuant to the following instruments: (1) a Loan Agreement (as the same has been amended, the "FEL Loan Agreement")[3] dated January 29, 2009 and (2) a Convertible Secured Promissory Note (the "FEL Convertible Note") in the original principal amount of $5,000,000 dated February 19, 2008. FEL holds a significant minority equity stake (approximately 49%) in Debtor. As of March 31, 2011, the aggregate principal amount owed by Debtor to FEL under both obligations totaled $9,249,039 with accrued but unpaid interest of $92,656. The FEL debt is secured by the same collateral securing the indebtedness under the GE Loan Agreement BUT importantly is entirely subordinate to the GE debt with one exception.[4] FEL holds a first-priority security interest only in grain in storage and in transit that has been financed in whole or in part by FEL, and proceeds of such grain in storage and in transit that is not processed by Debtor, but expressly excluding any grain-in-process or byproducts or proceeds of grain-in-process.

11. Pursuant to the FEL Loan Agreement, FEL agreed to make available to Debtor a $4,000,000 revolving line of credit and to guaranty a $1,000,000 letter of credit

---

[2] FEL is a subsidiary of the Rex America Group. FEL is also the member of the Debtor holding 49% of the total amount of outstanding membership interests (equity) in the Debtor. The next largest holder holds only 8%.

[3] The FEL Loan Agreement has been amended once by an Amendment No. 1 to the Loan Agreement dated September 2, 2010.

[4] FEL has subordinated its rights in the collateral to GE pursuant to a Subordination Agreement dated September 27, 2006, as amended by a First Amendment to Subordination Agreement dated February 19, 2008 and a Second Amendment to Subordination Agreement dated January 29, 2009.

(which guaranty obligation has since been extinguished). As of March 31, 2011, the principal amount owed by Debtor under the FEL Loan Agreement is $3,8756,950, and an additional $39,862 in accrued and unpaid interest is outstanding. The FEL Loan Agreement is governed by Ohio law. The outstanding principal amount under the FEL Loan Agreement bore non-default interest payable monthly at an annual rate of 8% during the first year it was outstanding, 12% during the second year it was outstanding, and the entire outstanding principal amount and all accrued and unpaid interest thereon matured on January 31, 2011. The default interest rate under the FEL Loan Agreement is 5% over the rate effective immediately prior to an event of default. The indebtedness under the FEL Loan Agreement is evidenced by a Promissory Note dated January 29, 2009.

12. Debtor also issued the FEL Convertible Note in the original principal amount of $5,000,000 to FEL on February 19, 2008. The outstanding principal amount of the FEL Convertible Note bears non-default compounded interest at a monthly rate of 1% and default interest at an annual rate of 18%. The FEL Convertible Note is payable in 120 equal monthly installments of principal and interest that commenced on [August 31, 2008]. Events of default under the FEL Convertible Note include failure to make any payment when due and the commencement of any voluntary bankruptcy proceeding by Debtor. As of March 31, 2011, the Convertible Note balance is $5,279,432, with $52,794 in accrued and unpaid interest is outstanding.

13. Debtor's indebtedness to FEL under both the FEL Loan Agreement and the FEL Convertible Note is secured by a Mortgage Deed of Trust, Security Agreement, Assignment and Fixture Financing Statement dated December 22, 2006 and by a

Security Agreement dated December 22, 2006, each of which has been amended as of February 19, 2008 and January 29, 2009. The FEL loans also are subject to certain affirmative and negative covenants, as well as numerous events of default. Importantly, FEL cannot enforce its security interests until the GE obligations are paid in full, or absent authority from GE, or with respect to the limited solo collateral.

***Status of the Debtor's cash position at the Petition Date***

14. AS of the petition date, the Debtor has cash in its bank accounts in the area totaling approximately $1,294,000.[5] The Lenders perfected security interests appear to cover the cash in debtor's deposit accounts.

15. The Debtor is in immediate and irreparable need of the use of the cash to continue its business and to pay its employees and post-petition obligations. The Debtor has prepared and attaches a four-week budget of cash use under which it seeks to have authority to use cash collateral. The Debtor expects that it will need approximately $95,000 to meet its obligations for the stub week of the bankruptcy through the first week of May, 2011. Afterwards the cash burn rate is approximately $100,000 a week through the first week in June.

16. The Debtor anticipates submitting for Court approval a Motion to approve a post-petition supply and financing contract with a highly respected Bio-Fuel company that will enable it to operate the Plant at full capacity. Operations at or near capacity will ensure that the Debtor can take advantage of the significant equity in the Plan above the total of the secured lender's debts. However, in the meantime, the Debtor seeks to

---

[5] This total of funds is after deduction from Debtor's cash report for payment of final pre-petition professional bills and exclusive of the $250,000 retainer paid to counsel for its representation in the chapter 11 case.

use cash collateral on a limited basis and under the constrictions of the proposed budget in order to preserve its options to pursue the post-petition contract and financing agreement.

17. While it is not expected that the Debtor's operations during the next four weeks will result in any profit (in fact the preparation for increased production will be a losing sum game for this first four weeks, the Debtor projects substantial earnings and profitable operations beginning in June and replenishing all of the cash collateral used by the end of July. *See* **Exhibit "B"** operating projections for June through December 2011.

## RELIEF REQUESTED

18. By this Motion, Debtor requests authority to use cash collateral to continue its business operations. Pursuant to the provisions of §552 of the Bankruptcy Code, all post-petition cash proceeds of pre-petition non-cash assets owned Debtor would be claimed by the Secured Creditors as collateral for obligations owed to the Secured Creditors pre-petition. Proceeds of sales of inventory, of retained ethanol would constitute post-petition collateral of the Secured Creditors. Accordingly, those cash proceeds as collected would constitute cash collateral within the meaning of §363(a) of the Bankruptcy Code (hereinafter referred to as the "Cash Collateral").

19. As discussed above, the present cash deposits generated by prior operations and collection of accounts constitutes Debtor's sole source of operating capital at the present time.

20. Sections 363(c)(2), 363(e) and 1107 of the Bankruptcy Code allow Debtor to use the Cash Collateral in the ordinary course of the Debtor's businesses if (a) the

entities which have a secured interest in such Cash Collateral consent to such use, or (b) pursuant to a court order, such use is authorized and the interest of the secured creditors in the Cash Collateral is protected adequately. Section 361 provides that the Secured Creditors' must be provided adequate protection, such as an equity cushion between the value of the collateral and the amount of the secured debt, or with replacement collateral in lieu of an equity cushion.

21. The Debtor submits the Verified Statement of James P. Halbert in support of this Motion. In that statement, Mr. Halbert describes that the assets of the Debtor have recently been appraised at a operating value of a minimum od $51.5 million, and a shut in value of $40,000,000. As a result, even at the much lower shut in value (to which the Debtor would take some argument), the secured lenders have an equity cushion that adequately protects them under the statute for the Debtor's budgeted use of cash during the month of May through the first week in June (and frankly much further). Since the use of the cash will be in large part in preparation for resumption of the Debtor's operations, the realization of operations at reasonable capacity will increase the collateral cushion several fold.

### CASH COLLATERAL USE PENDING THE FINAL HEARING

27. Inasmuch as all of Debtor's cash may constitute Cash Collateral and Debtor's use of such Cash Collateral is necessary to continue the ordinary course operation of the business of Debtor, and to avoid immediate and irreparable harm to Debtor's estate pending a Final Hearing, the immediate approval, on an interim basis, of Debtor use of cash collateral is necessary to ensure adequate protection, and is justified under the circumstances. First, the Debtor has spoken to FEL and it consents to the

Debtor's use of cash for this one-month budget period. Second, the Debtor will seek to negotiate an arrangement with respect to cash collateral with GE as well during the next week, if necessary , afterwards.

28. Pending the Final Hearing, Debtor will adhere to the Interim budget attached. The Interim Budget provides for Debtor to continue its previous ordinary and usual course of business dealings, and takes into account the fact that vendors will likely require Debtor to operate on a cash-on-delivery or cash-in-advance basis, as opposed to normal credit terms.

29. Adherence to the Interim Budget during the period pending the Final Hearing ensures that cash will be used only for those expenditures necessary to permit Debtor

31. If Debtor is not authorized to use the Cash Collateral both on an immediate basis and after the Final Hearing, the operation of Debtor's business will come to a halt, Debtor's estate will be immediately and irreparably harmed and Debtor's opportunity for a successful reorganization will vanish. *See* Verified Statement of James P. Halbert attached as Exhibit "P." Such circumstances would severely impair the opportunity of creditors and equity holders to realize value from Debtor.

## PROCEDURE

32. Notice of this Motion and the interim hearing thereon has been given to the Office of the United States Trustee for the Northern District of Texas, the secured creditors and the other parties listed on the attached service list. Debtor proposes to give notice of entry of the Proposed Interim Cash Collateral Order and of the Final

Hearing on this Motion, by first class mail, to all parties listed on the Service List. Debtor submits that no further notice is necessary.

## CONCLUSION

WHEREFORE, Debtor respectfully requests that the Court:

(i)  enter an order authorizing Debtor, on an interim basis and pursuant to the Interim Budget, to use Cash Collateral on a limited basis pending the Final Hearing and finding that the Secured Creditors have adequate protection for such use.;

(ii)  schedule the Final Hearing;

(iii)  at the Final Hearing, enter an order authorizing Debtor to use Cash Collateral and granting adequate protection to the Secured Creditors, including, if necessary, a Replacement Lien; and

(iv)  grant Debtor such other and further relief as this Court shall deem just and proper.

Dated:  April 27, 2011.                    Respectfully submitted,

**BLOCK & GARDEN, LLP**

　　*/s/ Richard Levy*
I. Richard Levy
State Bar No. 12260520
Christopher M. McNeill
State Bar No. 24032852
Susan Frierott
State Bar No. 24041247
5949 Sherry Ln., Suite 900
Dallas, Texas 75225
Tel: (214) 866-0990
Fax: (214) 866-0991
*levy@bgvllp.com*

## CERTIFICATE OF SERVICE

      I certify that on April 27, 2011, a copy of the foregoing Motion was served upon the parties prescribed in the Complex Chapter 11 Procedures and in the manner reflected on the attached service list via e-mail, facsimile or hand delivery and upon the United States Trustee's Office by e-mail and facsimile.

                                                   */s/ I. Richard Levy*
                                                   I. Richard Levy

Levelland/Hockley County Ethanol, LLC
Att: James P. Halbert
103 S. FM 2646, PO Box 26
Levelland, TX  79336-0026
**Debtor       by hand**

I. Richard Levy
Block & Garden, LLP
5949 Sherry Lane, Suite 900
Dallas, TX  75225
**Counsel to Debtor       by hand**

Nancy S. Resnick, Esq.
Office of the U.S. Trustee
1100 Commerce St., Room 976
Dallas, TX  75242-1699
**Counsel to US Trustee       via email**

Mr. Jamie Weber
GE Energy Financial Services
800 Long Ridge Road
Stamford, CT  06830
jamie.weber@ge.com
**Senior Secured Creditor Group       via email**

Farmers Energy Levelland, LLC
Att: Doug Bruggeman
2875 Needmore Road
Dayton, OH  45414
**Subordinated Secured Creditor       via email**

Bosselman Energy, Inc.
3123 W Stolley Park Road
Grand Island, NE  68801
**20 largest       via email**

CEI Pipeline
Tim Shanahan
701 Cedar Lake Blvd.
Oklahoma City, OK  73114
**20 largest       via e-mail**

Farmer's Co-Op Elevator
Dean Sasser
P.O. Box 1087
Levelland, TX  79336
**20 largest       via e-mail**

Ferm Solutions
Att: Shane Baler
PO Box 203
Danville, KY  40423
**20 largest       via e-mail**

First Insurance Funding Corp
P.O. Box 66468
Chicago, IL  60666-0468
**20 largest       via fax 847-374-3010**

Friona Wheat Growers
Att: Greg O'Brien
P.O. Box 248
Friona, Tx  79035
**20 largest       via fax 806-250-2150**

Gary Neill Trucking
Att: Gary Neill
1102 E. Archer Road
Seymour, TX  76380
**20 Largest       via fax 940-889-4772**

Genencor/Danisco US Inc
Att: Amber Trumbull
PO Box 7247-8528
Philadelphia, PA  19170-8528
**20 largest       via fax 585-256-525**

Hansen Mueller
Att: Chris Rau
8951 Synergy Dr., Suite 224
McKinney, TX  75070
**20 largest       via e-mail**

| | |
|---|---|
| J.D. Heiskell & Co.<br>Att; Tim Regan<br>1616 S. Kentucky<br>Amarillo, Tx  79102<br>  ***20 largest  via e-mail*** | John & Neta Loepky Farms<br>Att: John Loepky<br>430 US HWY 180 West<br>Seminole, Tx  79360<br>  ***20 largest  mail*** |
| Julian Coleman<br>810 W. 16th Street<br>Lamesa, TX  79331<br>  ***20 largest  via mail*** | Land of Lakes Purina Mills<br>Att: Mike Johnston<br>P.O. Box 64102, Mail Station 5505<br>St. Paul, MN  55164<br>  ***20 Largest  via fax*** |
| Lariat Dairy Inc.<br>Att: Jason Bryan - Commodities Plus<br>P O Box 1036<br>Farwell, TX  79325<br>  ***20 Largest  via fax*** | Nathan Segal & Company<br>Att: Amber Trumbul<br>P.O. Box 272189<br>Houston, TX  77277-2189<br>  ***20 Largest  via fax*** |
| Opplinger Feedyard Inc.<br>Att: Don Oppliger<br>P O BOX 854, 520 CR 14<br>Clovis, NM  88101<br>  ***20 Largest  via e-mail*** | Sanderson Grain<br>Att: Les Wilks-Titan<br>P.O. Box 116<br>Springlake, Tx  79082<br>  ***20 largest  via fax*** |
| Triple Nickel Inc.<br>808 W. 19th<br>Muleshoe, Tx  79347<br>  ***20 largest  mail*** | Kenneth Weston, Esq<br>Courtney, Countiss, Brian & Bailey, LLP<br>600 S. Tyler St. Suite 1700<br>Amarillo, TX  79105<br>kweston@courtneylawfirm.com<br>  ***Attorney for JD Heiskell  via fax*** |
| Doug Bruggeman<br>Rex American Resources<br>2875 Needmore Rd.<br>Dayton, OH  45414<br>dbruggeman@rexamerican.com<br>  ***Largest Member Interest  via email*** | Internal Revenue Service<br>Special Procedures-Insolvency<br>PO Box 7346<br>Philadelphia, PA  19101-7346<br>  ***GovernmentNotice   mail*** |
| State Comptroller of Public Accounts<br>Revenue Acctg-Bankr. Section<br>PO Box 13528<br>Austin , TX  78711<br>  ***Government Notice  -mail*** | Internal Revenue Service<br>Special Procedures-Insolvency<br>PO Box 7346<br>Philadelphia, PA  19101-7346<br>  ***Government Notice  mail*** |

**In re Levelland/Hockley County Ethanol, LL**            **Bankr. Case No. 11-50162-RLJ-11**
                                     **Shortened Service List  04/27/2011**

| | |
|---|---|
| State Comptroller of Public Accounts<br>Revenue Acctg-Bankr. Section<br>PO Box 13528<br>Austin , TX  78711 | United States Attorney<br>3rd Floor, 1100 Commerce St.<br>Dallas, TX  75242-1699 |
| *Government Notice*     mail | *Government Notice*     mail |